IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRIDGETT P. ROBERTSON,                                    )
                                                          )
            Plaintiff,                                    )
                                                          )
v.                                                        )          Civil Action No.: 3:23-cv-777
                                                          )
VIRGINIA STATE UNIVERSITY,                                )
                                                          )
MAKOLA M. ABDULLAH, Ph.D.,                                )
President, Virginia State University,                     )
                                                          )
TIA A. MINNIS, Ph.D.,                                     )
Interim Provost/Vice President for Academic Affairs,      )
Virginia State University,                                )
                                                          )
ISIS N. WALTON, Ph.D.,                                    )
Dean, College of Humanities and Social Sciences,          )
Virginia State University,                                )
                                                          )
DONALD E. PALM, III, Ph.D.,                               )
former Provost and Vice President of Academic Affairs,    )
Virginia State University,                                )
                                                          )
CARLTON E. EDWARDS, Ph.D.,                                )
former Interim Chair of the Department of Mass            )
Communications, Virginia State University,                )
                                                          )
VIRGINIA STATE UNIVERSITY                                 )
BOARD OF VISITORS,                                        )
                                                          )
DR. VALERIE BROWN,                                        )
Rector, Virginia State University Board of Visitors,      )
                                                          )
MS. SHAVONNE GORDON,                                      )
Vice Rector, Virginia State University Board of Visitors, )
                                                          )
MS. PAMELA A. CURREY,                                     )
Secretary, Virginia State University Board of Visitors,   )
                                                          )
MR. VICTOR BRANCH,                                        )
Member, Virginia State University Board of Visitors,      )
                                                          )

DR. JOSEPH A.F. CHASE, JR.,                          )
Member, Virginia State University Board of Visitors, )
                                                     )
MR. THOMAS COSGROVE,                                 )
Member, Virginia State University Board of Visitors, )
                                                     )
DR. CHRISTINE M. DARDEN,                             )
Member, Virginia State University Board of Visitors, )
                                                     )
DR. ROBERT DENTON, JR.,                              )
Member, Virginia State University Board of Visitors, )
                                                     )
DR. HAROLD GREEN, JR.,                               )
Member, Virginia State University Board of Visitors, )
                                                     )
DR. LEONARD HAYNES, III,                             )
Member, Virginia State University Board of Visitors, )
                                                     )
MS. DAPHNE MEEKS,                                    )
Member, Virginia State University Board of Visitors, )
                                                     )
MR. JON MOORE,                                       )
Member, Virginia State University Board of Visitors, )
                                                     )
MR. WILLIAM MURRAY,                                  )
Member, Virginia State University Board of Visitors, )
                                                     )
MR. WILLIAM THOTA,                                   )
Member, Virginia State University Board of Visitors, )
                                                     )
and                                                  )
                                                     )
MR. EDWARD OWENS,                                    )
Member, Virginia State University Board of Visitors, )
                                                     )
                    Defendants.                      )
_____)

## **COMPLAINT**

Plaintiff, Bridgett P. Robertson, Ph.D. ("Dr. Robertson" or "Plaintiff"), by counsel,

respectfully states the following for her Complaint against the Defendants, Virginia State

University ("VSU"), Makola M. Abdullah, Ph.D, VSU's President;  Donald E. Palm, III, Ph.D.,

2

VSU's former Provost and Vice President of Academic Affairs; Tia A. Minnis, Ph.D., VSU's Interim Provost and Vice President for Academic Affairs; Isis N. Walton, Ph.D., Dean of VSU's College of Humanities and Social Sciences; Carlton E. Edwards, Ph.D.; VSU's Board of Visitors; Dr. Valerie Brown, Rector of VSU's Board of Visitors, Ms. Shavonne Gordon, Vice Rector of VSU's Board of Visitors, Ms. Pamela A. Currey; Secretary of VSU's Board of Visitors; and the members of VSU's Board of Visitors, Mr. Victor Branch, Dr. Joseph A.F. Chase, Jr., Mr. Thomas Cosgrove, Dr. Christine M. Darden, Dr. Robert Denton, Jr., Dr. Harold Green, Jr., Dr. Leonard Haynes, III, Ms. Daphne Meeks, Mr. Jon Moore, Mr. William Murray, Mr. William Thota, and Mr. Edward Owens (collectively, the "Defendants").

## I.     <u>INTRODUCTION</u>

1.      Dr. Robertson brings causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), against Virginia State University ("VSU") arising from discrimination against her on the basis of her sex and race, and retaliation against Dr. Robertson for her complaints about discrimination.

2.      Dr. Robertson also brings cause of actions under the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq.* (the "EPA"), against VSU for discrimination on the basis of sex by paying Dr. Robertson, a female, less than the amounts paid to males for equal work on jobs that require equal skill, effort, and responsibility, and which are performed under similar working conditions in violation of 29 U.S.C. § 206(d).

## II.     <u>PARTIES</u>

3.      Plaintiff, Dr. Robertson, is a natural person who is a citizen of the Commonwealth of Virginia and she resides in Hanover County, Virginia.  Dr. Robertson is a Black woman.

4. Defendant, VSU, is a public university located in Ettrick, Virginia in Chesterfield County near the City of Petersburg. VSU has more than 500 employees. It is located at 1 Hayden Drive, Petersburg, Virginia 23806.

5. Makola M. Abdullah, Ph.D. ("Dr. Abdullah") is VSU's President and he has served in this position since 2016.

6. Donald E. Palm, III, Ph.D. ("Dr. Palm") was VSU's Provost and Vice President of Academic Affairs until about August 2023.

7. Tia A. Minnis, Ph.D. ("Dr. Minnis") is VSU's Interim Provost/Vice President for Academic Affairs.

8. Isis N. Walton, Ph.D. ("Dr. Walton") is the Dean of VSU's College of Humanities and Social Sciences.

9. Carlton E. Edwards, Ph.D. ("Dr. Edwards") was Interim Chair of the Department of Mass Communications from about 2016 to 2020 and he is currently a faculty member.

10. The Board of Visitors is the governing body for Virginia State University. VSU's Board of Visitors is led by its Rector, Vice Rector, and Secretary.

11. Dr. Valerie Brown is Rector of VSU's Board of Visitors.

12. Ms. Shavonne Gordon is Vice Rector of VSU's Board of Visitors.

13. Ms. Pamela A. Currey is Secretary of VSU's Board of Visitors.

14. The other members of VSU's Board of Visitors are Mr. Victor Branch; Dr. Joseph A.F. Chase, Jr.; Mr. Thomas Cosgrove; Dr. Christine M. Darden; Dr. Robert Denton, Jr.; Dr. Harold Green, Jr.; Dr. Leonard Haynes, III; Ms. Daphne Meeks; Mr. Jon Moore; Mr. William Murray; Mr. William Thota; and Mr. Edward Owens.

15. At all relevant times, Dr. Robertson was and is an "employee" of VSU as defined by 42 U.S.C. § 2000e(f).

16. At all relevant times, VSU was and is an "employer" as defined by 42 U.S.C. § 2000e(b).

17. At all relevant times, Dr. Robertson was and is an "employee" of VSU as defined by 29 C.F.R. § 1620.8 and 29 U.S.C. § 203(e).

18. At all relevant times, VSU was and is an "employer" as defined by 29 C.F.R. § 1620.8 and 29 U.S.C. § 203(d).

### III. JURISDICTION AND VENUE

19. On or about September 3, 2021, Dr. Robertson timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and pursuant to the EEOC's work sharing agreement with the Virginia Division of Human Rights (EEOC Charge No.: 438-2021-01510) ("Charge of Discrimination").

20. Dr. Robertson's Charge of Discrimination included the subject discrimination claims based upon her sex (female) and race (African American) as well as retaliation.

21. The EEOC issued a Dismissal and Notice of Rights dated August 17, 2023 ("Notice") with regard to the Charge of Discrimination.

22. Dr. Robertson timely files this action less than ninety (90) days after her receipt of the Notice from EEOC.

23. This Court has subject matter jurisdiction over this action pursuant to Title VII and 29 U.S.C. § 216(b).

24. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the subject causes of action arise under Title VII and the EPA, laws of the United States.

25.     Venue for this action properly lies in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this action arose in Ettrick, Virginia, which is among the territories assigned to the Richmond Division of the Eastern District of Virginia.  *See* Local Rule 3 of the U.S. District Court Rules (E.D. VA).

## IV.     FACTUAL BACKGROUND

### A.     Relationship between the parties.

26.     VSU's Board of Visitors is responsible for controlling and expending funds of the University including its appropriations, appointing the President, establishing tuition and fee costs, appointing faculty and setting their salaries as well as other duties.

27.      Faculty salaries at VSU are set by its Board of Visitors. Pursuant to Virginia Code § 23-165.6, the Board of Visitors "shall control and expend the funds of the University and any appropriation hereafter provided, and shall make all needful rules and regulations concerning the University, appoint the president, who shall be its chief executive officer, and all professors, teachers and agents, and fix their salaries, and generally direct the affairs of the University."

28.      In addition, according to Administrative Code Title 23, Chapter 13: "The Board of Visitors or other governing body of every state supported institution of Higher Education in Virginia is authorized to establish rules and regulations for...the employment of professors, instructors, and all other employees...of the institution."

29.     The Provost and Vice President for Academic Affairs is the University's chief academic officer responsible for the administration and advancement of the University's academic programs and services.  The Provost is directly responsible for overseeing the academic quality and vision toward the development and ongoing enhancement of teaching, scholarship and service.

The Provost's obligations include recruitment, retention, and development of the faculty and staff, management and oversight of the budget, and implementation of policies and procedures affecting faculty and staff.

30.     Faculty salaries at VSU are approved by the Board of Visitors based upon the recommendation of the President.

31.     The Department of Mass Communications ("Department") is within VSU's College of Humanities and Social Sciences.

**B.      An overview of Dr. Robertson's education and experience.**

32.     Dr. Robertson earned a Bachelor of Science in Mass Communication from Norfolk State University in 1983 and a Master of Education, Administration & Supervision from Virginia State University in 1999 (*cum laude*).  She went on to earn a Ph.D. in Communication, Culture and Media Studies, specializing in mass communications and media studies, from Howard University in 2015 (*cum laude*).

33.     From 1981 to 1989, Dr. Robertson worked as a news reporter for WRHL Television Broadcasting, a news director, anchor, and reporter for WPLZ Eura Radio Broadcasting, and a news anchor and reporter for WRVQ/WRVA Radio Broadcasting, all in Richmond, Virginia.

34.     After a career in television and radio broadcast journalism as a new director, anchor, and reporter, Dr. Robertson entered academia in 1989.  Before VSU, she worked as an Administrative Assistant to the Dean of Students at Randolph-Macon College, Director of Student Activities at Virginia Union University, Assistant Director of Multicultural Affairs and Research Coordinator at Virginia Commonwealth University, and an Instructor at the College of William & Mary.

35.     Dr. Robertson began her employment at VSU in 2003 as an Adjunct Professor in the Department of Mass Communications.  In 2008, she became an Assistant Professor in the Department.  She became an Assistant Professor in the Department in the Fall of 2015 and continued in that role for several years.  Since 2008, Dr. Robertson has also served as the Internship Coordinator for the Department.

36.     Since becoming a Professor, Dr. Robertson has stayed involved in media production and broadcast journalism.  From 1999 to 2001, she was the Executive Producer and Host of Richmond City Scope, a Media One/Comcast news show.  From 2011 to 2012, she was the Executive Producer and News reporter for VSU Today, an Emmy award-winning television show than aired on WWBT Channel 12 in Richmond, Virginia.

37.     Dr. Robertson has also been involved in research and writing projects and her work in the area of mass communications has been published.  She has given presentations on mass communications topics at various conferences.  She is a member of many professional and honorary organizations in her field of study.

38.     At VSU, in addition to instruction and other duties, Dr. Robertson has served on numerous committees and has held advisor roles, including graduate and undergraduate student advisor and Circle K International Chapter advisor.

**C.     Dr. Robertson's difficulties with earning tenure and being promoted to leadership positions within the Department of Mass Communications and the resulting retaliation.**

39.     In about April 2016, Dr. Carlton E. Edwards (a Black man) was appointed by the Provost to be Interim Chair of the Department of Mass Communications.  At the time of his appointment, Dr. Edwards was not a tenured faculty member.

40.     Since 2016, Dr. Robertson had been subjected to harassing and discriminatory conduct on the basis of her sex and race from Dr. Edwards.  For example, Dr. Edwards was often hostile towards Dr. Robertson, would needlessly berate her in front of students and staff, interfere with Dr. Robertson's courses and her instruction of students, and, when Dr. Robertson complained to the Provost, Dean of the College of Humanities and Social Sciences, and/or human resources personnel, Dr. Edwards gave Dr. Robertson undeserved, lower evaluations as a form of retaliation. Dr. Edwards did not treat other men or White women in the same degrading way.

41.     On or about January 24, 2017, Dr. Robertson formally complained about Dr. Edwards' inappropriate and discriminatory behavior, but the following Spring, he was reappointed as Interim Chair of the Department.

42.     As a form of hostility and retaliation, Dr. Edwards gave Dr. Robertson unfavorable assignments, tried to take away her role as coordinator of the Department's internship program, and suggested that Dr. Robertson needed to teach more courses than anyone else in the Department.  Dr. Robertson was directed to teach specific courses without consultation whereas other male faculty members were given flexibility to choose courses they wished to instruct.

43.     During Dr. Edwards' tenure as Interim Chair, the Department of Mass Communications continued its history of pay inequality with less qualified men being permitted to hold higher positions with less education and experience and getting paid more than women for the same or equivalent work.

44.     In 2018, Dr. Robertson expressed to Donald E. Palm, III, Ph.D. (a Black man), VSU's Provost and Vice President of Academic Affairs, that she was interested in serving as Interim Chair, but she was informed by the Provost that tenure would be required for the position.

45.    On or about September 26, 2018, Dr. Robertson met with Dr. Palm to discuss her concerns about harassment, unequal treatment, and retaliation by Dr. Edwards and VSU's discriminatory pay practices involving women faculty members being paid less than men. The following day, she memorialized their conversation in a letter to Dr. Palm.

46.    Soon thereafter, Dr. Edwards retaliated against Dr. Robertson and gave her a negative counseling assigning her downgrades in several categories. There was no factual basis for Dr. Edwards' negative evaluation of Dr. Robertson.

47.    On or about October 26, 2018, Dr. Robertson informed Dr. Palm in writing about Dr. Edwards' discriminatory and retaliatory actions against her.

48.    Following the Defendants' receipt of the letter, the retaliatory actions intensified. For example, Dr. Edwards defunded the signature Communications Symposium founded by Dr. Robertson, he eliminated students' ability to enroll in Dr. Robertson's internship course, and he provided misinformation about Dr. Robertson's internship courses and ultimately redirected the students to a third-party organization.

49.    On or about April 15, 2019, Dr. Robertson received a probationary appointment as an Assistant Professor in VSU's Department of Mass Communications. For the academic year from August 12, 2019 to May 18, 2020, her salary was $61,985.

50.    Also in April 2019, Dr. Robertson met with Dr. Palm, in person, and she clearly expressed her desire to take on the role of Chair of the Department. Dr. Palm stated that Dr. Robertson could not serve as Chair until she was tenured in the Department. Dr. Palm made the same comment in a Faculty Senate meeting in later in the Spring of 2019.

51.    However, the Department's first Chair was Mr. Ishmail Conway (a Black man) and he only held a Bachelor of Arts degree and was not tenured. He served as Chair for several years

before Dr. Edwards.  Dr. Edwards was also appointed and allowed to serve as Interim Chair before he had tenure.

52.     On or about May 15, 2019, Dr. Robertson emailed Dr. Palm about the evaluation process for the Chair position in the Department of Mass Communications.  The email detailed specific areas of University policy that were not followed in the chair appointment process.

53.     Dr. Robertson first applied for tenure and submitted her dossier in about August 2019.

54.     At the time Dr. Robertson applied for tenure, Dr. Edwards was still serving as Interim Chair of the Department of Mass Communications.  There had never been a bona fide election held for the Department's Chair position.

55.     When Dr. Robertson applied for tenure, Dr. Edwards did not follow the tenure procedures set forth in the Faculty Handbook, refused to meet with Dr. Robertson as is customary, hand-selected inappropriate persons to serve on the peer review committee, and refused to have Dr. Robertson's three-year review prepared, all of which caused her promotion and tenure to be delayed and cast into doubt.  He contravened the University policies and tried to form a committee consisting of his preferred members who would presumably deny tenure to Dr. Robertson.

56.     By August 30, 2019, Dr. Robertson's tenure application and dossier had been submitted to Dr. Edwards, but he was slow to act on it.

57.     For weeks, Dr. Edwards did not schedule a three-year review with Dr. Robertson to prepare for the tenure process.

58.     On or about September 12, 2019, Dr. Cheryl Johnson emailed Dr. Edwards to volunteer to serve on the committee for Dr. Robertson's tenure application and provided

recommendations for the other final committee member, Dr. Andrew Kanu, a former college dean who had familiarity with the Department.

59.    Although Dr. Edwards did not have authority to do so, for Dr. Robertson's tenure committee, Dr. Edwards appointed his close friend, Dr. Freddy Thompson (a Black male) who is not a full-time professor in the Department, and Dr. Rita Dandridge (a Black woman).   Dr. Dandridge is a professor in the Department of Languages and Literature and her background does not include mass communications.   Dr. Dandridge hired Dr. Edwards and they are close friends. It is believed that Dr. Edwards made these appointments in an attempt to deny Dr. Robertson tenure.

60.    At VSU, men and White women have an easier tenure review process than Black women, like Dr. Robertson.

61.    On or about October 14, 2019, Dr. Robertson wrote Dr. Lenneal Henderson, Dean of the College of Humanities and Social Sciences, and informed him of the ways in which Dr. Edwards was improperly commandeering her tenure application process.

62.    After involving the Dean, Dr. Robertson was able to have a different committee formed to review her tenure application.   Even so, Dr. Edwards' actions caused her a great deal of unnecessary stress and anxiety.

63.    On or about June 26, 2020, Dr. Edwards made a surprise announcement via email that Mr. Wellington ("Wells") M. Gordon (a White man) would be assuming the role of Interim Chair of the Department for the upcoming academic year.   Mr. Gordon did not have a Ph.D., terminal degree, or tenure.

64.     On or about August 21, 2020, Dr. Robertson received a probationary appointment as an Associate Professor in VSU's Department of Mass Communications.  For the academic year from August 10, 2020 to May 28, 2021, her salary was $63,845.

65.     On or about August 23, 2020, Dr. Robertson was informed that, at its August 6, 2020 meeting, the VSU Board of Visitors approved her for a Promotion from Assistant Professor to Associate Professor with Tenure in the Department of Mass Communications.

66.     In September 2020, Dr. Robertson accepted an assignment to work with Dr. Isis N. Walton on the website for VSU's College of Humanities and Social Sciences for additional compensation of $5,000, which was separate from her role as Associate Professor.

**D.     VSU fails to follow its Department Chair Credentials Policy and Dr. Robertson is denied opportunities to become Chair of the Department of Mass Communications.**

67.     University policy requires the Provost and Dean to confer with faculty about an appropriate Chair for each Department.  The faculty is to select a chair by vote then the Dean and Provost either accept or reject the selection.  If the faculty's choice is not accepted, the process begins again until a Chair is properly accepted by all parties.

68.     Pursuant to the policy, it is the responsibility of the Deans and Provost to ensure that recruitment and appointment procedures for department chairs reflect the University's commitment to equal employment opportunity.

69.     More specifically, the "Evaluation and Election/Reappointment of Chairs of Department" in the VSU Faculty Handbook further provides that, at the end of a chair's term, the faculty is polled on whether they wish the chair to be renewed.  The results of the poll are communicated to the Provost, Dean, and chair and, if a majority of the faculty opposes reappointment, serious consideration should be given to the appointment of a new chair.

(Evaluation and Election/Reappointment of Chairs of Department, Academic Procedures Manual, VSU Faculty Handbook, (2013)).

70.     The "Evaluation and Election/Reappointment of Chairs of Department" policy published in VSU's Academic Procedures Manual provides as follows:

> Prior to initiating search and nomination procedures for a new department chair, the faculty of the department should meet with the dean of the College to discuss the needs and  expectations of the department as they relate to the appointment of a new chair, the chair's role, and the type of search necessary that will most likely assure that an appropriate candidate be recommended, and to discuss any other considerations that bear upon the decision.

(Evaluation and Election/Reappointment of Chairs of Department, Academic Procedures Manual, VSU Faculty Handbook, (2013)).

71.     If present faculty is willing, the eligible faculty members hold an election for chair and the Department's preference is forwarded to the Dean.  If the Dean does not concur with the faculty recommendation, the Dean should meet with faculty to discuss the matter, and either a new election can be held or an external search can begin.

72.     The policy of VSU's Department Chair Credentials Policy, dated February 12, 2020 ("Credentials Policy"), is "to codify the qualifying academic credentials required for the appointment of a faculty member to the position of Department Chair."  Credentials Policy, § I.

73.     The Credentials Policy provides in pertinent part:

> To be eligible for filling the position of Department Chair, a faculty member be [sic] required to meet the following criteria:
> 1.      It is preferred that a Chair of each academic department be a tenured faculty member within the college to which the department belongs.
> 2.      The Chair of each academic department must hold a terminal degree in a discipline in the college in which he/she will be the chief academic officer.
> 3.      The Chair of each academic department must have prior college/teaching experience.

Credentials Policy, § III.

74. "The dean of each college shall organize timely elections of chairs from amongst eligible faculty members in their respective departments." Credentials Policy, § IV(1). "In the event that timely election of a department chair is temporarily not feasible, or a qualified faculty from within the department is not available, one of two nominees of the dean can be voted in as an interim chair and upon the provost's approval to fill the position for a maximum of two consecutive one-year terms." *Id.*, § IV(2).

75. The Credentials Policy was accepted by the Faculty Senate since 2021, but the Provost initially resisted approving it. In the Spring 2022 faculty policy meeting, the Provost indicated that he thought the Policy was too restrictive and would tie his hands and limited his ability to choose a chair.

76. The Credentials Policy was formally approved by the Faculty Senate Chair and Provost in September 2022 and the President on October 14, 2022.

77. Prior to Mr. Gordon's surprise announcement as Interim Chair of the Department of Mass Communications in June 2020, Dr. Robertson and the other Department faculty members were not consulted and did not have an opportunity to meet with the Dean and/or provide input on the appointment of a new Chair. There were no polls or elections held to determine the faculty's preference for the Chair position.

78. At the time of his appointment as Chair of the Department in June 2020, Mr. Gordon held a Master's Degree in music, he was only part-time within the Department of Mass Communications; and he did not possess a terminal degree in Mass Communications or any other discipline in the College of Humanities and Social Sciences.

79. As such, Mr. Gordon did not satisfy the criteria for Chair as set forth in the Credentials Policy. He was also not appointed in accordance with Evaluation and

15

Election/Reappointment of Chairs of Department policy contained in the Academic Procedures Manual of VSU Faculty Handbook. That policy requires that faculty is given an opportunity to volunteer to serve as chair and vote on the nomination for chair.

80. On or about June 26, 2020, Dr. Robertson wrote to Dr. Palm and expressed her dissatisfaction with the arbitrary selection and appointment of Mr. Gordon in light of the Chair Credentials Policy agreed upon by the Faculty Senate and she explained the pattern and practice of hostility that Dr. Edwards cultivated, especially directed towards herself and other women. Around the same time, Dr. Robertson expressed similar concerns to Dr. Lenneal Henderson, Dean of the College of Humanities and Social Sciences.

81. On July 7, 2020, Dr. Robertson and Dean Henderson discussed the ongoing issues involving Dr. Edwards and the Department's Chair position. Dean Henderson said that he recommended Dr. Robertson for the Chair position, but the Provost refused to appoint her.

82. During that conversation, Dean Henderson also told Dr. Robertson that when Black women went through the tenure process at VSU, the Provost did not want to approve their tenure, but White women who applied for tenure were approved without the same problems.

83. On or about December 6, 2020, Dr. Robertson wrote Dr. Palm again, explaining her frustration with how Mr. Gordon was appointed as Interim Chair, without consulting faculty members of the Department, and allowing Mr. Gordon to serve when he was not tenured, was only a part-time faculty member in the Department, and he did not hold a degree in mass communications or any other terminal degree. In her letter, Dr. Robertson asked to be appointed as Chair of the Department of Mass Communications.

84. In response, on March 16, 2021, Dr. Palm responded by letter to Dr. Robertson's December 6, 2020 correspondence. He said, among other things, "[p]er the Faculty Handbook, it

is my official position that changes in the Chair leadership position will occur via a department vote." He said he had "requested that all Deans manage the election process and provide recommendations to [the Provost's] office regarding changes in departmental leadership."

85. Soon thereafter, Dr. Robertson responded to Dr. Palm and stated she was the only tenured professor with the appropriate credentials and experience who wishes to be Chair and she asked to be appointed Interim Chair, just as had been done previously with Dr. Edwards (a Black man) and Mr. Gordon (a White man).

86. Nevertheless, in April 2021, Mr. Gordon was reappointed as Interim Chair.

87. On or about June 23, 2021, Dr. Robertson met with VSU's President to discuss the ongoing issues with the Chair position in the Department. During that conversation, Dr. Abdullah asked Dr. Robertson if she was going to sue for discrimination. Dr. Abdullah said that if Dr. Robertson sued, he would have to stop having discussions with her and stop his mentoring process with her. This was an overt threat of retaliation.

88. In early August 2021, just before the start of classes, Mr. Gordon took additional retaliatory action against Dr. Robertson. First, he made her the Graduate Student Advisor in addition to her other duties. Then he assigned all of Dr. Robertson's undergraduate advisees to another male faculty member and assigned Dr. Robertson all new undergraduate advisees. Then he forced Dr. Robertson to take on an additional graduate level course, Media Research Methods, only a few days before classes were to begin. Mr. Gordon reassigned the Media Research Methods course from Dr. Edwards to Dr. Robertson because Mr. Gordon said Dr. Edwards had not taught the subject before at the graduate level.

89.     Around the same time, Mr. Gordon was considering removing the internship requirements from students in the Department. Serving as Internship Coordinator had been one of Dr. Robertson's roles for about 15 years.

90.     On or about November 9, 2021, in a staff meeting, Mr. Gordon announced that he was stepping down as Chair.  Dr. Isis Walton (a Black man), Interim Dean of the College of Humanities and Social Sciences, who was present in the meeting, said that there would be an election the next semester to elect a new Chair and the Provost would not appoint Chairs any longer.

91.     However, on or about March 24, 2022, Dr. Jerry Crawford (a Black man) was appointed by the Dean and Provost to be Interim Chair of the Department of Mass Communications.  Dr. Crawford joined VSU from another university.

92.     As before, Dr. Crawford was appointed without consulting faculty in the Department and without holding an election in accordance with University policy.   This action violated the University's policies on selecting chairs which called for consultation and vote by the faculty.

93.     Upon information and belief, VSU's Provost, Dr. Palm, worked to bring Dr. Crawford to the University and created a position for him following Dr. Robertson's complaints about not being fairly considered for the position of Interim Chair.  In doing so, he prevented Dr. Robertson from becoming Interim Chair.

94.     In March 2023, Dr. Crawford announced the creation of an Assistant Chair position and invited faculty who were interested in the position to speak to him about it.

95. Dr. Robertson applied for the position, and on April 14, 2023, she was informed that she was approved for the position of Assistant Chair. Upon information and belief, Dr. Robertson was the only person to apply for the position.

96. In the Assistant Chair position, Dr. Robertson serves as an assessment coordinator and works on Department assessment and accreditation issues, which is nearly a full-time job in and of itself considering the required time commitment. However, the Assistant Chair position has lower pay and prestige as compared to the Chair or Interim Chair positions.

97. For years, Dr. Robertson been passed over for the position of Interim Chair and deprived of opportunities to serve as Chair or Interim Chair while less qualified men were selected by the Dean and Provost to serve in these positions without following VSU policy which requires faculty involvement, through consultations, polls, and votes, and sets forth the required credentials for these leadership positions.

**E. Dr. Robertson is deprived of equal pay for equal work as compared to her male colleagues.**

**1. An overview of the jobs and working conditions for Dr. Robertson and her male colleagues.**

98. The common core of responsibilities of each instructional faculty member in the College of Humanities and Social Sciences, and its Department of Mass Communications, include teaching, scholarship, and service.

99. The full-time workload of every faculty member in VSU's College of Humanities and Social Sciences, and its Department of Mass Communications, consists of a teaching load of twelve semester hours per semester, with exceptions possible for approved grant and/or research participation.

100. Every faculty member in the Department of Mass Communications has the following primary responsibilities. They must prepare syllabi which reflect course objectives; prepare lessons, activities, and lectures that serve to impart knowledge to students; instruct their students through the use of varying pedagogical methods, such as lectures, technology, practical classroom experiences, group discussion, and media; keep track of whether students are retaining knowledge and meeting the objectives and outcomes of the course through exams, projects, presentations, practical experiences, writing assignments, group work, service, and other activities; manage classroom dynamics; assist students with course material; advise majors; maintain office hours; provide feedback on assignments; input grades midterm and final grades; and attend contractually-mandated functions.

101. The duties of faculty in the Department of Mass Communication are generally performed in a classroom or lecture hall setting in an academic building on VSU's campus.

102. To fulfill their responsibilities, faculty members in the Department must study and prepare for class presentations and lectures; present their subject in an interesting and challenging manner; engage in class discussions; prepare tests and exams that fairly cover the subject taught; promptly grade tests and exams; and maintain regular office hours for student consultation and assistance. The effort required of all such faculty members is substantially the same.

103. Dr. Robertson and her male comparators performed the foregoing work under similar conditions, most often working in the same building.

### 2.    Dr. Robertson's work and salary history

104.    From 2008 to 2012, four academic years, Dr. Robertson was paid $45,000 per year as an Instructor.  For the 2013 and 2014 academic years, her annual salary was increased to $48,668.

105.    Upon receiving her Ph.D. in May 2015, she became an Assistant Professor and her annual salary was increased to $60,180 for the 2015, 2016, and 2017 academic years.  Her salary was later increased to $61,985 for the 2018 academic year and $63,985 for the 2019 academic year.

106.    Upon her promotion in 2020 to Associate Professor with tenure, her salary increased to $66,845 for the academic year ending in May 2021, which was $3,000 dollars more than her salary prior to tenure.

107.    The next year, 2022, Dr. Robertson's salary was increased 5% in accordance with a state-wide raise for state employees.

108.    Thereafter, Dr. Robertson continued to be paid $70,187 per year until she was informed on February 7, 2023 that her new salary would $80,000.  This salary increase was the result of VSU's new Compensation Pay Plan which resulted from a study of salaries at the University.

109.    On June 30, 2023, Dr. Robertson was informed of her tenured reappointment as Associate Professor and Assistant Chairperson with a salary of $93,333 for the academic year from August 1, 2023 to May 21, 2024.

110.    Faculty in the Department teach 3-4 course per semester and, at all relevant times, Dr. Robertson taught four courses per semester.  As compared to her male comparators, Dr. Robertson's courses involved a high distribution of enrollment hours (meaning she taught more

students).   She also taught graduate level courses and research courses which were more intensive and time consuming.

111.    As compared to Dr. Robertson's courses, the courses taught by Dr. Robertsons' male comparators are not more difficult, time consuming, or higher level and they do not have characteristics that would justify more compensation for teaching them.

112.    Dr. Robertson also has served as Internship Coordinator and Student Advisor (for graduate and undergraduate students).

113.    In addition to her teaching and advising responsibilities, Dr. Robertson has and continues to research, publish, develop new courses, and give presentations, as well as serve in certain leadership positions for the University.

114.    Dr. Robertson sits on more committees and does more extra service work for the Department of Mass Communications and VSU than the male faculty members in the Department, including the male comparators listed below.

### 3.    The salaries of Dr. Robertson's male comparators.[1]

#### i.    Dr. Duane Byrge

115.    Duane Byrge, Ph.D, a White man, was a non-tenured Assistant Professor in the Department who was hired by VSU in 2004.

116.    Dr. Byres primarily taught courses on film criticism and journalism.

117.    Upon information and belief, Dr. Byrge's salary history for academic years since 2011 is as follows: $61,567 (2011), $61,567 (2012), $63,414 (2013), $63,424 (2014), $63,889

---

[1] The stated salaries and job duties contained in this Complaint are based on information available to Plaintiff and upon information and belief.  Plaintiff reserves the right to amend, as necessary, after more reliable or different information is obtained through discovery or as her investigation into this case continues.

(2015), $64,682 (2016), $65,571 (2017), $66,622 (2018), $67,705 (2019), and $68,621 (2020). His employment with VSU ended in about 2021.

118.    Dr. Byrge made more in salary than Dr. Robertson for similar work.  For example, when Dr. Robertson earned her Ph.D. and became an Assistant Professor in 2015, she was paid $60,180 from 2015-2017.  As an Assistant Professor with a Ph.D., Dr. Byrge earned more than Dr. Robertson than every year since at least 2011.  When Dr. Robertson received tenure and a promotion to Associate Professor in 2020, she still made less than Dr. Byrge that year ($66,845 for Plaintiff versus $68,621 for Dr. Byrge).

### ii.    Dr. Carlton Edwards

119.    Carlton Edwards, Ph.D., a Black man, is a tenured Instructor in the Department who was hired by VSU in 2008.

120.    Dr. Edwards has taught the same or few courses per semester as compared to Dr. Robertson and taught less when he served as Interim Chair.  His coursework focuses on video and television production.

121.    Upon information and belief, Dr. Edwards' salary history for academic years since 2015 is as follows: $63,889 (2015), $75,502 (2016), $90,060 (2017), $90,207 (2018), $96,379 (2019), $80,474 (2020), and $73,864 (2021).

122.    Dr. Edwards was paid considerably more than Dr. Robertson for many years.  In 2021, Dr. Edwards was no longer serving as Interim Chair and yet he was paid more than Dr. Robertson, a tenured Associate Professor in the same Department ($66,845 for Plaintiff versus $73,864 for Dr. Edwards).

### iii. Mr. Wellington Gordon

123. Mr. Wellington Gordon, a White man, is a non-tenured Assistant Professor in the Department who was hired by VSU in 2018.

124. He teaches more courses in the Music Department than in the Department of Mass Communication.

125. Mr. Gordon holds a Bachelor of Science in Recording Arts Technology from Middle Tennessee State University (1998), a Bachelor of Music (Jazz) from North Carolina State University (2007), and a Master of Music, Music Performance and Production from Western Carolina University (2009).

126. Upon information and belief, Mr. Gordon's salary history for academic years since 2018 is as follows: $70,000 (2018), unknown (2019), $103,409 (2020), $106,737 (2021), and $109,753 (2022).

127. In 2020, before he was appointed Interim Chair, Mr. Gordon was paid $103,409 even though he did not have a Ph.D. At the same time, Dr. Robertson, an Associate Professor with a Ph.D. and tenure, earned only $66,845.

128. As of 2022, Mr. Gordon was no longer serving as Interim Chair but he makes $109,753. On the other hand, Dr. Robertson was paid $80,000 in 2023 (as a result the University's pay study). When she started serving as Assistant Chair (in addition to her teaching and other responsibilities), her salary was increased to about $88,000. Upon information and belief, Mr. Gordon still makes in excess of $100,000, more than Dr. Robertson, even after the university-wide salary adjustment and her additional pay as Assistant Chair.

#### iv.  Mr. Eric Jackson

129.    Mr. Eric Jackson, a Black man, is a non-tenured Assistant Professor in the Department who was hired by VSU in 2017.

130.    Mr. Jackson holds a Bachelor of Science in Mass Communications/Media Studies from Norfolk State University.

131.    Mr. Jackson teaches about the same number of courses as compared to Dr. Robertson.  His coursework focuses on music and video production.

132.    Upon information and belief, Mr. Jackson's salary history for academic years since 2018 is as follows: $65,475 (2018), 65,866 (2019), $68,960 (2020), $67,830 (2021), and $81,632 (2022).

133.    Defendants allowed Mr. Jackson to join the University as an Assistant Professor, but Dr. Robertson was not allowed to have this title until she earned her Ph.D.  Dr. Robertson was required to have a Ph.D. and tenure before she could be an Associate Professor, but other male employees were given this title without a Ph.D. or tenure when they joined the Department.

134.    Dr. Robertson has more education, experience, length of service with VSU and she performs substantially the same work as Mr. Jackson, yet she is paid less.  In 2021, for example, Dr. Robertson was paid $66,845 and Mr. Jackson was paid more than that for 2020 and 2021.

#### v.  Mr. Willis Smith

135.    Mr. Willis Smith, a Black man, is a non-tenured Instructor in the Department who was hired by VSU in 2017.

136.    Mr. Smith teaches about the same number of courses as compared to Dr. Robertson. His coursework focuses on public relations.

137.    Upon information and belief, Mr. Smith's salary history for academic years since 2018 is as follows: $64,369 (2018), $65,808 (2019), $66,920 (2020), $69,019 (2021) and $74,790 (2022).

138.    Mr. Smith, a man with less education, experience, and tenure with VSU, has been paid more than Dr. Robertson for substantially similar work.

### vi.    Others

139.    Curtis Holsopple, a White man, was paid a comparable salary to Dr. Robertson as a non-tenured Associate Professor in the Department and he did not hold a Ph.D.

140.    Upon information and belief, Mr. Holsopple's salary history for academic years since 2015 is as follows: $65,141 (2015), $65,949 (2016), $66,856 (2017), and $68,296 (2018). Mr. Holsopple left VSU in about 2019.

141.    Similarly, Cortez Dial, Ph.D., a Black man, was paid more than Dr. Robertson as a non-tenured Instructor in the Department and he did not hold a Ph.D.  Upon information and belief, Mr. Dial's salary history for academic years since 2015, after he was no longer Chief of Staff, is as follows: $106,149 (2015) and $107,555 (2016).  Mr. Dial retired from VSU in about 2017.

142.    Ronald Carrington, a Black man, was paid a comparable salary to Dr. Robertson as a non-tenured Associate Professor in the Department and he only held a Bachelor of Arts degree. Unlike Dr. Robertson, he was able to hold the title of Associate Professor without a Ph.D. or tenure. Mr. Carrington holds two Bachelor of Arts degrees.  Upon information and belief, Mr. Carrington's salary history for academic years since 2015 is as follows: $63,226 (2015) and $67,063 (2016).

143.    The Department's first chair, Ishmail Conway, a Black man, was paid more than Dr. Robertson as a non-tenured faculty member in the Department and he did not hold a Ph.D.

Mr. Conway was allowed to serve as Chair without a Ph.D. or tenure, unlike Dr. Robertson. On information and belief, Mr. Conway was paid approximately $95,341 in 2015 and $94,026 in 2016 before he left VSU in about 2016.

    **4.    The lower salary of Cheryl Johnson, another Black female professor in the Department.**

144.    Cheryl Johnson, Ph.D., a Black woman, is a tenured Associate Professor in the Department who was hired by VSU in 2001. Like Dr. Robertson, she is paid considerably less than her male counterparts.

145.    Upon information and belief, Dr. Johnson's salary history for academic years since 2011 is as follows: $53,403 (2011), $58,289 (2012), $60,038 (2013), $60,038 (2014), $61,239 (2015), $61,239 (2016), and $63,076 (2018). Salaries for other years are presently unknown.

    **F.    Summary**

146.    During her employment with VSU and up to the present, men with less experience and/or inferior credentials/education as compared to Dr. Robertson have been and are paid more than women for work substantially equal in skill, effort, and responsibility under similar working conditions.

147.    In contrast to Dr. Robertson, in the Department of Mass Communications, men with less education and experience are often allowed to have higher job titles (such as Assistant or Associate Professor) and hold positions of leadership (such as Interim Chair and Chair). Defendants required a Ph.D. and tenure from Dr. Robertson before she could serve in these positions and, to date, they have deprived Dr. Robertson of an opportunity to be Chair of the Department.

148.    As a result, Dr. Robertson has incurred damages, including lost wages and injury to her reputation and her damages are ongoing.

149.     In addition, Dr. Robertson has suffered physical and mental injuries, pain and suffering, and emotional distress, anxiety, mental anguish, shame, humiliation, embarrassment, loss of enjoyment of life, helplessness, hopelessness, inconvenience, and stress, for which damages Defendants are liable.  Her injuries have had a major negative impact on the quality of her life and her personal and social affairs.  She has also incurred attorneys' fees in connection with this matter.

### V.     CAUSES OF ACTION

**COUNT I:**
**DISCRIMINATION ON THE BASIS OF SEX**
**UNDER TITLE VII (42 U.S.C. § 2000e-2(a)(1))**

150.     Plaintiff incorporates by reference and realleges each allegation set forth above.

151.     Defendants willfully discriminated between employees on the basis of sex by allowing male employees with less experience and/or inferior credentials/education as compared to Plaintiff to be placed in higher positions (such as Assistant and Associate Professor) and positions of leadership (such as Chair or Interim Chair) when they do not hold a Ph.D. or other terminal degree or have tenure.  These positions offer more compensation and carry more prestige.

152.     Defendants also paid men more than women for work substantially equal in skill, effort, and responsibility under similar working conditions.

153.     Sex is not a bona fide occupational qualification reasonably necessary to the normal operation of VSU and its Department of Mass Communications and there is no justification or excuse for Defendants' discrimination.

154.     As alleged above, Dr. Robertson has suffered mental injuries and emotional distress and incurred compensable damages, including lost wages, for which Defendants are liable.

155.     Defendants acted with actual malice toward Dr. Robertson and/or acted under circumstances amounting to a reckless, willful, and wanton disregard of Dr. Robertson's rights.

## COUNT II:
## RETALIATION CLAIM UNDER TITLE VII
### (42 U.S.C. § 2000e-3(a))

156.     Plaintiff incorporates by reference and re-alleges each allegation set forth above.

157.     Dr. Robertson engaged in protected activity by reporting to VSU (including, specifically the President, Provost, and VSU human resources personnel) the discrimination she faced and her unequal pay, as alleged more particularly above.

158.     In response, Defendants retaliated against Dr. Robertson for complaining about discrimination by denying her an opportunity to serve as Interim Chair for additional pay, forcing her to teach additional courses without extra pay, giving her baseless negative evaluations, pulling resources from programs she developed, verbal harassment, reducing  availability of courses taught, refusing to provide advancement opportunities that are afforded to male colleagues, blocking and interfering her tenure process, coercing her to provide certain student grades and outcomes and denying her a third-year review, which constitutes a materially adverse action.

159.     Defendants' actions against Dr. Robertson were punitive and unlawfully retaliatory in response to Dr. Robertson's complaints of discrimination and her participation in activities that are protected from retaliation under Title VII.

160.     As alleged above, Dr. Robertson has suffered mental injuries and emotional distress and incurred compensable damages for which Defendants are liable.

## COUNT III:
## DISCRIMINATION UNDER THE EQUAL PAY ACT
### (29 U.S.C. § 206(d))

161.     Plaintiff incorporates by reference and re-alleges each allegation set forth above.

162.     At all relevant times, VSU paid Dr. Robertson, a female, considerably less than VSU paid similarly situated male faculty members in the Department of Mass Communications.

163.    Dr. Robertson performed equal or more work than her male comparators, described above.

164.    Dr. Robertson's job required equal or more skill, effort, and responsibility as compared to her male comparators' jobs.

165.    Dr. Robertson performed her job under similar working conditions to her male comparators.  Dr. Robertson and her male comparators worked primarily at VSU's campus and taught classes in the same buildings.

166.    The difference in pay between Dr. Robertson and her male comparators was not due to a seniority system, a merit system, a system that measures earnings by quantity or quality of production, or a differential based on any factor other than sex.

167.    Dr. Robertsons' male comparators do not possess seniority over Dr. Robertson, their work is not worthy of any merit over Dr. Robertson's work, and their work does not exceed Dr. Robertson's work in quality or quantity of productivity.

168.    Defendants willfully discriminated between employees on the basis of sex by paying Dr. Robertson wages in an amount less than the wages paid to male comparators.

169.    Defendants knew, or showed reckless disregard for the fact, that discriminatory wage payments, as set forth herein, were prohibited by the EPA.

170.    Due to the actions of Defendants, Dr. Robertson has suffered lost wages in the form of the wage differential between Dr. Robertson and her male comparators and Dr. Robertson has incurred, and will continue to incur, attorneys' fees and costs in connection with this action.

### COUNT IV:
### UNLAWFUL RETALIATION UNDER THE EQUAL PAY ACT
### (29 U.S.C. § 215(a)(3))

171.    Plaintiff incorporates by reference and re-alleges each allegation set forth above.

172. As discussed above, Dr. Robertson complained to VSU (including, specifically the President, Provost and VSU human resources personnel) about being paid less than men in her Department, constituting a complaint and assertion of her rights to equal pay under the EPA.

173. Dr. Robertson had a good faith belief that Defendants were violating her rights under the EPA.

174. In response, VSU retaliated against Dr. Robertson for complaining about unequal pay by denying her an opportunity to serve as Chair or Interim Chair for additional pay, denying her a salary increase to the level of comparable men, forcing her to teach additional courses without extra pay, taking away her responsibilities and job duties, giving her unfavorable courses and work assignments, and other ways detailed above which constitute materially adverse actions.

175. Defendants knew, or showed reckless disregard for the fact, that these retaliatory actions against Dr. Robertson were prohibited by the EPA.

176. Due to the actions of Defendants, Dr. Robertson suffered lost wages and benefits, damage to her reputation, and emotional and mental distress, including, but not limited to, humiliation and embarrassment, all of which damages are continuing.

## VI.     RELIEF REQUESTED

WHEREFORE, Plaintiff, Bridgett P. Robertson, Ph.D., respectfully requests that this Court:

A.     Enter judgment in her favor and against Defendants, jointly and severally;

B.     Declare the acts and practices complained of herein to be unlawful and in violation of Plaintiff's rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

C.     Declare the acts and practices complained of herein to be in violation of Plaintiff's rights secured by the Equal Pay Act of 1963, 29 U.S.C. § 206(d) *et seq.*;

D.      Enjoin Defendant from engaging in such unlawful employment practice and order such other affirmative action as may be appropriate;

E.      Award Plaintiff compensatory damages for Defendants' violation of Plaintiff's federal constitutional and civil rights, including, without limitation, pecuniary losses, lost wages, damages for mental and/or emotional distress, inconvenience, humiliation, embarrassment, personal and professional reputational damages, and other damages to be shown at trial;

F.      Award Plaintiff all back pay and benefits, including salary increases, with interest on same running from the earliest recoverable date until the date a final judgment is entered for her;

G.      Award her the wage differential between Plaintiff and her male comparators for each pay period, including overtime, for two years prior to the filing date of this Complaint and award her an additional equal amount as liquidated damages;

H.      Award her back pay and benefits, including salary increases, bonuses, vacation pay, and health insurance, and additional equal amount as liquidated damages;

I.      Award her reputational damages to compensate her for the loss of income and earning capacity that Defendants' conduct has caused;

J.      Award her money damages for the emotional distress caused by the unlawful actions of Defendants;

K.      Award Plaintiff punitive damages against Defendants;

L.      Award Plaintiff her reasonable attorneys' fees and costs expended herein;

M.      Award Plaintiff a separate amount to offset the adverse tax effects of lump sum payments of damages and/or back pay;

N.      Award Plaintiff pre- and post-judgment interest on any monetary award;

O.      Award Plaintiff all other equitable relief as may be appropriate to effectuate the purposes of 42 U.S.C. § 2000e-5; and

P.      Award all other such equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. § 215(a)(3); and

Q.      Award Plaintiff any and all other and further relief the Court deems just and appropriate, including leave to amend the facts stated herein, add or change parties and/or claims, and amend the damages sought as further evidence is obtained through discovery in this matter.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
**BRIDGETT P. ROBERTSON**
*Plaintiff*


Dated: November 15, 2023.                    /s/ Robert J. Allen
                                                                Counsel


Robert J. Allen (VSB No. 65214)
THORSENALLEN LLP
5413 Patterson Avenue, Suite 201
P. O. Box 17094
Richmond, VA 23226
Telephone: (804) 447-7234
Facsimile: (804) 447-7813
E-mail: rallen@thorsenallen.com
    *Counsel for Plaintiff, Bridgett P. Robertson*